IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

UNITED STATES OF AMERICA,

                        Docket No.:   1:20-CR-00037-TJM

v.

Eric William Tompkins,

           Defendant.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## GOVERNMENT RESPONSE TO
## DEFENSE MEMORANDUM OF LAW
## IN SUPPORT OF ERIC TOMPKINS' MOTION TO SUPPRESS

Dated: June 26, 2020

                        GRANT C. JACQUITH
                        United States Attorney
                        Northern District of New York

By: _____
     Rachel L. Williams
     Assistant United States Attorney
     Bar Roll No. 701542
     455 Broadway
     Albany, New York 12007
     T: (518) 431-0234
     Rachel.Williams@usdoj.gov

## TABLE OF CONTENTS

I.   INTRODUCTION ..........................................................................................................1

II.  BACKGROUND............................................................................................................2

III. ANALYSIS.....................................................................................................................5

    A.   The Search of the SUBJECT CARD was constitutional......................................5

    B.   Law Enforcement Officers acted in good faith when they searched the SUBJECT CARD purusant to the Original and Subsequent Search Warrants ................................9

IV.  CONCLUSION ............................................................................................................12

The United States of America (hereinafter "government"), by and through its attorney, the United States Attorney for the Northern District of New York, submits this memorandum of law in opposition to defendant Eric William Tompkins' Motion to Suppress. *See* Dkt. No. 9-1

## I.  INTRODUCTION

The defendant moves to suppress all evidence discovered during a government forensic examination of the SUBJECT CARD, inserted inside of the SUBJECT PHONE. The defense argues that the Original Search Warrant for the SUBJECT PHONE did not specifically describe or mention the SUBJECT CARD, which rendered its search unconstitutional. The defense further asserts that the good faith exception does not apply in the instant case, because law enforcement officials who executed the Subsequent Search Warrant "intentionally obscured the source of the probable cause 'images' used in the second warrant by intentionally misrepresenting and expanding the property the Magistrate authorized to be searched to include the SanDisk Micro SD Card." *See* Dkt. 9-1.

The Government submits that the search of the SUBJECT CARD was authorized by the Original Search Warrant. The plain language of the Original Search Warrant permitted the search of the SUBJECT CARD. Additionally, the SUBJECT CARD is a component of the SUBJECT PHONE and therefore lawfully searched by law enforcement officials pursuant to the Original Search Warrant. Alternatively, even if this Court finds the search of the SUBJECT CARD to be outside the scope of the Original Search Warrant, a hearing on this issue would be necessary to establish that law enforcement officers acted in good faith when they searched the SUBJECT CARD. At a hearing, the government would establish that law enforcement officials had an objective and reasonable belief that the SUBJECT CARD was a component of the SUBJECT PHONE, and could therefore be lawfully searched.

## II.    BACKGROUND

On September 3, 2009, the defendant was convicted of violating RCW A.44.089, Child Molestation Third Degree in the State of Washington as a result of his guilty plea to this offense. As part of his plea agreement, the defendant was required to register as a sex offender and register his address with any new state to which he moved. *See* Dkt. 9-2, ¶ 7.

On October 19, 2019, the New York State Division of Criminal Justice Service (NYDCJS) determined the defendant was not registered as a sex offender in New York State. *See* Dkt. 9-2, ¶ 15.

On March 18, 2019, the Honorable Daniel J. Stewart signed a Criminal Complaint accusing the defendant of violating 18 U.C.S. § 2250(a) – failure to register as a sex offender, and signed a warrant for the defendant's arrest. *See* Dkt. 9-2, ¶ 16.

On March 28, 2019, the defendant was arrested by the United States Marshal Service (USMS). Law enforcement officials seized the defendant's Samsung SM-J336AZ cell phone, bearing serial number R28K53A6L4T (SUBJECT PHONE), from the defendant's person. The SUBJECT PHONE remained in the possession of the USMS. *See* Dkt. 9-2, ¶ 17.

On April 19, 2019, law enforcement officials applied for a Search and Seizure Warrant for the SUBJECT PHONE (Original Search Warrant). In Attachment A to the Original Search Warrant, the property to be searched is "a Samsung Model SM-J336AZ cell phone bearing serial number R28K53A6L4T currently located in the United States Marshals Service evidence locker located in Albany New York (hereinafter the SUBJECT DEVICE). This warrant authorizes the forensic examination of the SUBJECT DEVICE for the purpose of identifying the *electronically stored information* described in Attachment B." *See* Dkt. 9-2, Attachment A. (emphasis added).

Attachment B to the Original Search Warrant directed law enforcement officials to search "All records on the SUBJECT DEVICE described in Attachment A that related to violations of 18 U.C.S. § 2250(a), Failure to Register as a Sex Offender, and involve ERIC TOMPKINS […]" *See* Dkt. 9-2, Attachment B.  The last paragraph of Attachment B stated the "terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or *electronic storage (such as flash memory or other media that can store data*) and an photographic form." *See* Dkt. 9-2, Attachment B (emphasis added).

On May 1, 2019, the USMS transferred possession of the SUBJECT DEVICE to the New York State Police's Computer Crimes Unit (CCU) in order for the CCU to conduct a forensic analysis of the SUBJECT DEVICE.  The CCU observed a Micro SD Card, bearing serial number 88460VJG50FF (SUBJECT CARD), inserted inside and attached to the SUBJECT PHONE.  The CCU was unable to unlock the SUBJECT PHONE, as it was locked and required a PIN to open, which neither the USMS or the CCU obtained from the defendant.  The CCU removed the attached SUBJECT CARD from the SUBJECT PHONE and conducted a forensic examination of the SUBJECT CARD's data for evidence of the defendant's charged 18 U.S.C. § 2250(a) violation.  During the course of the forensic examination of the SUBJECT CARD, a senior investigator with the CCU observed several images of child pornography contained in the SUBJECT CARD's deleted space.  This senior investigator stopped his review of the SUBJECT CARD and reported his discovery of the child pornography images to Deputy United States Marshal (DUSM) Imburgio.  *See* Dkt. 9-3, ¶ 10.

On August 14, 2019, DUSM Imburgio requested a search and seizure warrant for the SUBJECT PHONE and SUBJECT CARD (Subsequent Search Warrant).  Attachment A to the

3

Subsequent Search Warrant described the property to be searched as the SUBJECT PHONE and SUBJECT CARD, which Attachment A collectively referred to as the "SUBJECT DEVICE." *See* Dkt. 9-3, Attachment A. Attachment B limited the records and information sought to those related to violations of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(a)(1). *See* Dkt. 9-3, Attachment B.

In paragraph 9 of the Affidavit that supported the Subsequent Search Warrant (Subsequent Affidavit), the affiant stated that the Magistrate Judge "issued a search warrant for the SUBJECT DEVICE (inclusive of the SUBJECT PHONE and SUBJECT CARD), to search for information that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2250(a). That search warrant is also attached hereto as an exhibit for reference." *See* Dkt. 9-3, ¶ 9.

In paragraph 10 of the Subsequent Affidavit, the affiant stated that a "forensic examination has been completed of the SUBJECT CARD, which was attached to, and removed from, the SUBJECT PHONE, and data extracted has been analyzed for evidence of SORNA violations (18 U.S.C. § 2250(a)), as authorized by Judge Stewart's warrant." *See* Dkt. 9-3, ¶ 10.

In paragraph 11 of the Subsequent Affidavit, the affiant stated that the Senior Investigator who completed the forensic examination on the SUBJECT CARD "observed several images in the SUBJECT CARD's deleted space that he identified as depicting the sexual exploitation of minors, as that term is defined in 18 U.S.C. § 2256." The affiant then provided an example of four of these images, providing their file names and image descriptions. *See* Dkt. 9-3, ¶ 11.

On January 30, 2020, the defendant was indicted in the present case for a violation of 18 U.S.C. 2252A(a)(5)(B), possession of child pornography. *See* Dkt. 1.

III.   <u>ANALYSIS</u>

The search of the SUBJECT CARD was constitutional because the Original Search Warrant provided for its search, as the SUBJECT CARD is a form of electronic storage and is a component of the SUBJECT PHONE.  Even if this Court finds that the SUBJECT CARD should have been specifically described in the Original Search Warrant, law enforcement officials acted in good faith when they searched the SUBJECT CARD pursuant to the Original and Subsequent Search Warrants.

   A.   **The search of the SUBJECT CARD was constitutional.**

To comport with the Fourth Amendment, a search warrant must particularly describe the place to be searched and the person or things to be seized.  <u>U.S. Const. amend. IV.</u> This 'particularity requirement' provides a "limitation curtailing the officers' discretion when executing the warrant" so that the "safeguard of having a magistrate determine the scope of the search is not lost.'" <u>United States v. Voustianiouk</u>, 685 F.3d 206, 211 (2d Cir. 2012) (quoting <u>United States v. George</u>, 975 F.2d 72, 76 (2d Cir. 1992)).  However, the "particularity requirement is a standard of practical accuracy rather than a hypertechnical one." <u>United States v. Fiorito</u>, 640 F.3d 338, 348 (8th Cir. 2011);  see also <u>United States v. Otero</u>, 563 F.3d 1127, 1132 (10th Cir. 2009)(" [a] warrant need not necessarily survive a hyper-technical sentence diagraming and comply with the best practices of *Strunk & White* to satisfy the particularity requirement.")  Additionally, "Courts have frequently rejected particularity arguments where context makes clear that a specific phrase or paragraph, although insufficiently precise when read in isolation, is nevertheless appropriately limited." <u>United States v. Alston</u>, 2016 U.S. Dist. LEXIS 63776, at 12 (S.D.N.Y. Apr. 29, 2016) (citing <u>Hale v. United States</u>, No. 08 Civ. 94,

2010 U.S. Dist. LEXIS 73604 (N.D. Ill. July 22, 2010) (Government admitted that phrase was non-specific when read in isolation, but context prevented warrant from being overbroad)).

As the Supreme Court has recently noted, modern cellphones are "mini computers" capable of storing a litany of data. Riley v. California, 573 U.S. 373 (2014). Federal courts have "rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers." United States v. Bass, 785 F.3d 1043, 1049 (6th Cir. 2015)(quoting United States v. Richards, 659 F.3d 527, 539 (6th Cir. 2011)). This occurs because "[c]riminals can—and often do—hide, mislabel, or manipulate files to conceal criminal activity [such that] a broad, expansive search of the [computer] may be required." Bass, 785 F.3d at 1049 (quoting United States v. Stabile, 633 F.3d 219, 237 (3d Cir. 2011)).

In United States v. Wilson, a 2019 decision by the U.S. District Court of the Western District of Missouri, the Court was presented with the issue of whether the search of a micro SD card inserted into a cell phone was lawful when the search warrant did not specifically describe the SD card as property to be searched. United States v. Wilson, No. 17-4106, 2019 U.S. Dist. LEXIS 166318, (W.D. Mo., Sept. 16, 2019). Instead, the search warrant sought "all data […] including but not limited to all contents of the cellular phone, such as applications installed, messages sent and received, picture and video files which may still be on the device, including any deleted data which may be recovered from the memory of the cell phone." Id. at 4. On appeal, Wilson argued that the search of the SD Card was unconstitutional because the SD Card was not specifically described in the search warrant and, therefore, constituted an unlawful warrantless search. Id. at 7.

In upholding the constitutionality of the search of the SD Card, the Wilson Court refused to apply a strict, "hypertechnical" application of the particularity requirement of the Fourth

Amendment, and instead chose a "standard of practical accuracy." Id at 7 (quoting United States v. Fiorito, 640 F. 3d 338, 346 (8th Cir. 2011). The Wilson Court looked to the 8th Circuit's analysis of the particularity requirement in the Beckmann decision.

In Beckmann, law enforcement officers received a defendant's consent to search his computer, which had two external hard drives connected to it and one of the hard drives was disconnected from a wall socket. United States v. Beckmann, 786 F.3d 672. 676 (8th Cir. 2015). On appeal, Beckmann argued that his consent to search the computer did not include the two external hard drives. Id. at 677. Beckmann asserted that the hard drives at issue were not component parts of the computer, but rather more akin to a cellular phone. Id. at 679. The 8th Circuit disagreed based on the functionality of a hard drive. It found that the "sole purpose of an external hard drive is to store computer data. Additionally, external hard drives, unlike cellular telephones, are functionally inoperable – and their contents unreviewable – when unplugged from a computer." Id. The Circuit Court next looked to the term "computer" and found that the "common understanding" of this term "encompasses the collection of component parts involved in a computer's operation." Id. at 678 (quoting United States v. Herndon, 501 F.3d 683, 690 (6th Cir. 2007)). The Court then concluded that the connected external hard drives were a component of the computer and, a result, law enforcement had an objectively reasonable basis to conclude that they were encompassed in Beckmann's consent to search the computer. Id. at 678-679.

The Wilson Court similarly reviewed the functionality of an SD Card and determined it was "substantially similar and functionally the same" as an external hard drive as "both are solely used to store digital data." Wilson at 9. Like an external hard drive, an SD Card is "functionally inoperable – and their contents unreviewable – when unplugged from a digital device." Id at 9-10 (quoting Beckmann, 786 F.3d at 679). As a result, the Wilson Court found

7

that, "because as a connected external hard drive is commonly understood to be part of a computer, it therefore follows that a connected SD card is commonly understood to be part of a cell phone." Wilson at 10; see also United States v. Herndon, 501 F.3d 683, 691 (6th Cir 2007)(holding that "the term "computer" is commonly understood to include the collection of components involved in a computer's operation"). As a component of the cellular phone, the Court held that the search warrant for the cellular phone did not need to specifically describe the SD Card, and the search of the SD Card was therefore constitutional.

In the instant matter, this Court should find that the Original Search Warrant authorized a search of the SUBJECT CARD for two primary reasons: First, the plain language of Attachment B to the Original Search Warrant directed law enforcement officials to search the SUBJECT PHONE for all "records" of the SORNA violation in "whatever form and by whatever means [the records] may have been created or stored, including any form of computer or *electronic storage (such as flash memory or other media that can store data*) and any photographic form." As the SUBJECT CARD is by its very nature electronic storage, and was connected to the SUBJECT PHONE, the Original Search Warrant provided for its lawful search. Additionally, Attachment B to the Original Search Warrant further directed law enforcement officials to search only those records that related to the alleged 18 U.S.C. 2250(a) violation. As a result, the Original Search Warrant particularly described those items to be searched and seized, in compliance with the Fourth Amendment.

Second, this Court should adopt the logic applied by the Wilson Court, and find that the SUBJECT CARD is a component of the SUBJECT PHONE and did not need to be specifically described in the Original Search Warrant. The SUBJECT CARD is solely used to store digital data and is inoperable when not inserted into the SUBJECT PHONE. Further, its contents are

8

unreviewable when disconnected from the SUBJECT PHONE. As a result, the SUBJECT CARD is component of the SUBJECT PHONE, not akin to one. Additionally, because a cellular phone is a minicomputer, a component of a cellular phone should be treated no differently than a component of a computer. Following the "common understanding" that the term "computer" encompasses the collection of component parts involved in the computer's operation, the term "cellular phone" encompasses the collection of component parts involved in its operation. Therefore, the SUBJECT CARD in the present case was encompassed in the search of the SUBJECT PHONE and did not need to be specifically described in the Original Search Warrant to meet the particularly requirement of the Fourth Amendment. For these reasons, the search of the SUBJECT CARD pursuant to the Original Search Warrant was constitutional.

    **B.    Law Enforcement Officers acted in good faith when they searched the SUBJECT CARD pursuant to the Original and Subsequent Search Warrants**

The government maintains that the SUBJECT CARD is a component of the SUBJECT PHONE and did not need to be specifically described in the Original Search Warrant. However, to the extent this Court disagrees, the Government submits the law enforcement officials' search of the SUBJECT CARD was executed in good faith.

The Supreme Court created a "good faith" exception to prevent the exclusion of evidence otherwise unlawfully obtained, applicable only when police act with a "reasonable good faith belief" that their conduct is lawful. United States v. Mayo, No. 2:13-CR-48, U.S. Dist LEXIS 158866 (D. Vt. Nov. 6, 2013)(quoting United States v. Leon, 468 U.S. 897, 909, 919 (1984)). As discussed above, in Beckmann, the 8th Circuit analyzed whether a deputy reasonably believed that Beckmann's consent to search the computer included the external hard drives connected to the computer. In finding the deputy's belief reasonable, the Court looked to the

"common understanding that the term "computer" encompasses the collection of component parts involved in a computer's operation." Beckmann, 786 F.3d at 678-679.

Moreover, in evaluating whether officers acted in good faith when conducting a search, courts may look to allied or supporting documents that accompanied the search warrant. United States v. Rosa, 626 F.3d 56, 64 (2d Cir. 2010). While these documents cannot cure a constitutionally defective warrant, "those documents are still relevant to [the] determination of whether the officers acted in good faith, because they contribute to [the] assessment of the officers' conduct in a particular case." Id.

In the present case, the defendant claims that law enforcement officials attempted to conceal their unlawful search of the SUBJECT CARD "by affirming that the original warrant defined the "SUBJECT DEVICE" as inclusive of the SUBJECT PHONE and SUBJECT CARD." Dkt. 9-1, 8-9. The defendant points to paragraphs 9 and 10 of the Subsequent Affidavit as evidence of this intent to mislead and "prevent the Magistrate Judge from discovering that the information presented in ¶ 11 of the August 19, 2019 (the deleted images) were recovered as the result of a warrantless search." Id. at 9.

The defendant's argument fails for several reasons. First, the plain language of Attachment B of the Original Search Warrant directed law enforcement officials to search the *electronic storage (such as flash memory or other media that can store data [...]"* on the phone for evidence of the underlying SORNA violation. Dkt 9-2, Attachment B (emphasis added). By its very function, the SUBJECT CARD provided electronic storage for the SUBJECT PHONE, so law enforcement had a reasonable good faith basis to search the SUBJECT CARD, narrowed in scope for evidence of the SORNA violation.

Second, and as described above, the SUBJECT CARD is logically – if not commonly – considered a component of the SUBJECT PHONE. A review of the Affidavit in support of the Subsequent Search Warrant (Subsequent Affidavit) evidences law enforcement officers' reasonable belief that the SUBJECT CARD is a component of the SUBJECT PHONE. For example, paragraph 9 of the Subsequent Affidavit states that the Magistrate Judge "issued a search warrant for the SUBJECT DEVICE (inclusive of the SUBJECT PHONE and SUBJECT CARD), to search for information that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 2250(a). That search warrant is also *attached hereto as an exhibit for reference*." Dkt. 9-3, ¶ 9. (emphasis added). This paragraph is not evidence of law enforcement's attempt to fool the Magistrate Judge, but rather evidence of law enforcement's reasonable belief that the authorized search of the SUBJECT PHONE encompassed a search of the SUBJECT CARD. Additionally, paragraph 10 of the Subsequent Affidavit states that the SUBJECT CARD, "which was attached to and removed from, the SUBJECT PHONE" had data extracted from it and analyzed for evidence of SORNA violations "*as authorized* by Judge Stewart's warrant." Dkt. 9-3, ¶ 10. Like paragraph 9, paragraph 10 is further evidence that law enforcement officers reasonably believed the Original Search Warrant permitted the search of the SUBJECT CARD. Further, it would be illogical for law enforcement to attach the Original Search Warrant to the Subsequent Search Warrant if their intent was to mislead the Magistrate Judge in regard to what he authorized in the Original Search Warrant. For these reasons, law enforcement had an objective and reasonable belief that the SUBJECT CARD is a component of the SUBJECT PHONE and could lawfully be searched pursuant to the Original Search Warrant.

Third, the fact that law enforcement officials specifically described the SUBJECT CARD in the Subsequent Search Warrant and not the Original Search Warrant does not render the

search of the SUBJECT CARD pursuant to the Original Search Warrant unconstitutional or performed in bad faith. Law enforcement was not aware of the existence of the SUBJECT CARD at the time the Original Search Warrant was requested, and therefore could not have specifically described it. To require law enforcement to specifically – and prospectively – describe in a search warrant every conceivable attachment to and component of an electronic device is not only a hypertechnical interpretation of the Fourth Amendment's particularity requirement, but likely a legal impracticability due to the inexhaustible nature of modern day technology.

Fourth, had law enforcement officials truly intended to mislead the Magistrate Judge into believing that the Original Search Warrant specifically described the SUBJECT CARD, the officials would not have incorporated and attached the Original Search Warrant – which did not specifically describe the SUBJECT CARD – to the Subsequent Search Warrant. The only logical conclusion to be reached from the totality of the circumstances surrounding the search of the SUBJECT CARD is that law enforcement officials reasonably believed – in good faith – that the Original Search Warrant permitted their search of the SUBJECT CARD.

IV.   **CONCLUSION**

Based on the foregoing, the government respectfully requests that this Court deny the Defense's Motion to Suppress and hold that the search of the SUBJECT CARD pursuant to the Original and Subsequent Search Warrants was constitutional or, in the alternative, performed in good faith.

## CERTIFICATE OF SERVICE

I hereby certify that on June 26, 2020 the foregoing was electronically filed with the clerk of the court by using the CM/ECF system. I further certify that on this date the foregoing document and the notice of electronic filing were mailed by first-class mail to the following non-CM/ECF participant:

Paul Evangelista, Es.
Email: paul_evangelista@fd.org

Paul Evangelista, Esq.
First Assistant Defender
39 N. Pearl Street, 5th Flr.
Albany, New York 12207

/s/ Yolanda Maeweather
Yolanda Maeweather
Legal Assistant